ORIGINAL

# In the United States Court of Federal Claims

No. 18-454
Filed: September 21, 2018

FILED
SEP 2 1 2018
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DARLENE BENNETT, | * |
| Plaintiff, *pro se*, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Darlene Bennett**, Suitland, Maryland, Plaintiff, *pro se*.

**Joshua A. Mandelbaum**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN**, *Senior Judge*.

I.   **RELEVANT FACTUAL BACKGROUND.**[1]

On November 9, 2017, Ms. Darlene Bennett submitted an Income-Driven Repayment Plan Request ("IDR Request") to the United States Department of Education (the "DOE"). Compl. at 2. "Income-driven repayment . . . plans are designed to make [a borrower's] student loan debt more manageable by reducing [the] monthly payment amount." *See* FEDERAL STUDENT AID, AN OFFICE OF THE U.S. DEPARTMENT OF EDUCATION, INCOME-DRIVEN REPAYMENT (IDR) PLAN REQUEST, https://studentloans.gov/myDirectLoan/ibrInstructions.action (last visited Sept. 19, 2018). Question 17 of the IDR Request asks: "Has your income significantly changed since you filed your last federal income tax return." Compl. Ex. 2 at 6. If the borrower's response is "no," the IDR Request requires the borrower to "[p]rovide [her] most recent federal income tax return or transcript." Compl. Ex. 2 at 6. Ms. Bennett responded "no" to Question 17 of the IDR Request, but did not submit her most recent federal income tax return or transcript. Compl. Ex. 2 at 6.

---

[1] The facts herein were derived from the March 27, 2018 Complaint ("Compl.") and attached exhibits thereto ("Compl. Exs. 1–2").

On November 14, 2017, Fedloan Servicing[2] sent Ms. Bennett an e-mail stating that her federal student loans were in default. Compl. Ex. 2 at 14 (e-mail from Fedloan Servicing to Darlene Bennett). The November 14, 2017 e-mail informed Ms. Bennett that she had "30 days to contact Fedloan Servicing to review [her] options or [her] loans may be transferred to the [DOE]'s Default Resolution Group." Compl. Ex. 2 at 14.

On November 21, 2017, Fedloan Servicing sent Ms. Bennett an e-mail acknowledging receipt of her IDR Request. Compl. Ex. 2 at 15 (e-mail from Fedloan Servicing to Darlene Bennett).

On February 6, 2018, the DOE sent Ms. Bennett a letter to inform her that, "Action Financial Services, LLC[3] . . . has commenced collection efforts" concerning her federal student loan debt. Compl. Ex. 2 at 9 (letter from the DOE to Darlene Bennett). The February 6, 2018 letter also stated that "the entire unpaid balance of [Ms. Bennett's] loan is due and payable." Compl. Ex. 2 at 9.

On February 24, 2018, Fedloan Servicing sent Ms. Bennett an e-mail providing her with "information that [Fedloan Servicing's] customers have found most helpful to answer . . . Billing & Payment questions." Compl. Ex. 2 at 13 (e-mail from Fedloan Servicing to Darlene Bennett).

On March 12, 2018, Ms. Bennett contacted the DOE Inspector General's Office twice concerning her IDR Request. Compl. at 4. On that same day, Fedloan Servicing sent Ms. Bennett an e-mail acknowledging receipt of "[Ms. Bennett's] complaint about [the IDR Request], which was submitted before [Ms. Bennett's] loans defaulted" and stating that Fedloan Servicing was "working with the appropriate experts to research this issue;" consequently, Ms. Bennett's "loans [were] requested for a reinstatement back to good standing." Compl. Ex. 2 at 3.

On March 19, 2018, Fedloan Servicing sent Ms. Bennett a letter stating that it could not restore her defaulted loans to good standing, because her IDR Request was incomplete, although it was received prior to the loan transfer date.[4] Compl. Ex. 2 at 2 (letter from Fedloan Servicing to Darlene Bennett) ("Although your IDR [Request] was received . . . , [it] was incomplete. You did not provide the required supporting documentation[.]"). Therefore, even if Ms. Bennett submitted a complete IDR Request, nevertheless, she must continue making scheduled monthly student loan payments, because "there was no General Forbearance time available on [her] account[.]" Compl. Ex. 2 at 2. After receiving this information, Ms. Bennett again contacted Fedloan Servicing. Compl. at 4.

---

[2] Fedloan Servicing is a commercial enterprise operated by the Pennsylvania Higher Education Assistance Agency, that services federal student loans. FEDLOAN SERVICING, WHO WE ARE, http://myfedloan.org/general/about/who-we-are (last visited Sept. 19, 2018).

[3] Action Financial Services, LLC is a private company that collects federal student loan debt on behalf of the DOE. See ACTION FINANCIAL SERVICES, LLC, ABOUT US, http://actionfinancialservices.net/aboutus.html (last visited Sept. 19, 2018).

[4] The court construes this letter to reflect that Ms. Bennett's federal student loan account with Fedloan Servicing was transferred to Action Financial Services, LLC.

On March 23, 2018, Fedloan Servicing informed Ms. Bennett in an e-mail that it is "unable to take action on [Ms. Bennett's] concern due to procedural policy and governing regulation." Compl. Ex. 2 at 1 (e-mail from Fedloan Servicing to Darlene Bennett).

## II. PROCEDURAL HISTORY.

On March 27, 2018, Ms. Darlene Bennett ("Plaintiff") filed a *pro se* Complaint ("Compl.") in the United States Court of Federal Claims alleging that her federal student loan account "was wrongly defaulted, closed[,] and given to a collection agency for collection." Compl. at 1. The March 27, 2018 Complaint requests "[r]elief of [Plaintiff's] student loan through the student loan forgiveness program" and "monetary relief at the judge[']s discretion for unnecessary harassment[,] because [Plaintiff] is not able to pay, being ignored, stress for having to continue to revisit this hard issue as well as any court cost and legal fees for attorney[,] if one is hired." Compl. at 3.

On May 1, 2018, the Government filed an Unopposed Motion For Extension Of Time for an additional twenty-one days to file a response to Plaintiff's March 27, 2018 Complaint. On May 4, 2018, the court issued an Order granting the Government's May 1, 2018 Unopposed Motion. On May 8, 2018, Plaintiff filed a Notice of a conversation with the Government's Counsel concerning jurisdiction and the possibility of settlement.

On June 19, 2018, the Government filed a Motion To Dismiss ("Gov. Mot."), pursuant to Rules of the United States Court of Federal Claims 12(b)(1) and 12(b)(6). On June 26, 2018, Plaintiff filed a "Motion Opposing Defendant's Motion To Dismiss" ("Pl. Resp.").[5] On July 13, 2018, the Government filed a Reply ("Gov't Reply.").

On August 22, 2018, Plaintiff filed a Notice, together with an attached copy of Plaintiff's Fedloan Servicing account summary, stating that a payment in that account was due on August 24, 2018. The August 22, 2018 Notice also states that the Government's Counsel informed Plaintiff in May 2018 that Plaintiff's account was "placed on indefinite hold and that all interest and late fees had been removed."

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

---

[5] The court construes Plaintiff's June 26, 2018 Motion as a Response to the Government's June 19, 2018 Motion To Dismiss.

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). Plaintiff must also make "a non-frivolous allegation that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

### B. Standards Of Review.

#### i. Standard Of Review For A Motion To Dismiss, Pursuant To Rule Of The United States Court Of Federal Claims 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

#### ii. Standard Of Review For A Motion To Dismiss, Pursuant To Rule Of The United States Court Of Federal Claims 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) (authorizing a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

### iii. Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). This court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). A *pro se* plaintiff must still establish the court's jurisdiction. *See Tindle v. United States*, 56 Fed. Cl. 337, 341 (Fed. Cl. 2003) ("The fact that plaintiff is proceeding *pro se*, however, does not change the ultimate legal standard and plaintiff's burden of proof on subject matter jurisdiction.").

## C. The Government's June 19, 2018, Motion To Dismiss.

### i. The Government's Argument.

The Government argues that the March 27, 2018 Complaint should be dismissed, pursuant to RCFC 12(b)(1), because it "does not identify any source of law," as the basis for the claims alleged therein. Gov't Mot. at 5. To the extent that the March 27, 2018 Complaint can be construed as alleging a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, any such claim must be dismissed, because the APA is not a money-mandating statue. *See Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("the APA does not authorized an award of money damages at all"). To the extent the March 27, 2018 Complaint can be construed as alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, any such claim must be dismissed, because Congress has authorized the United States District Courts, with exclusive jurisdiction to adjudicate such claims. *See* 15 U.S.C. § 1692k ("Any action to enforce any liability created by this subchapter may be brought in any appropriate United States [D]istrict [C]ourt").

The March 27, 2018 Complaint also should be dismissed, pursuant to RCFC 12(b)(1), to the extent that it alleges tort claims. Gov't Mot. at 6. The Tucker Act provides that the court does not have jurisdiction to adjudicate a claim "sounding in tort." 28 U.S.C. § 1491(a)(1). Since the March 27, 2018 Complaint also requests monetary relief for "unnecessary harassment," "being ignored," and "stress for having to continue to revisit this hard issue." Gov't Mot. at 6 (citing Compl. at 3). To the extent that the March 27, 2018 Complaint alleges claims that sound in tort, they also must be dismissed.

To the extent the March 27, 2018 Complaint requests relief from Plaintiff's obligation to repay her student loans and an order to DOE employees to "do their job" (Compl. at 9), the court also does not have jurisdiction to adjudicate claims for equitable relief, without an underlying claim for money judgment. *See James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) ("It is true that limited equitable relief sometimes is available in Tucker Act suits[, but] that equitable relief must be incident of and collateral to a money judgment") (internal quotation marks and citation omitted); *see also Stephanatos v. United States*, 81 Fed. Cl. 440, 445 (Fed. Cl. 2008) ("It is rudimentary that the [United States] Court of Federal Claims lacks jurisdiction to grant general

equitable relief."). Similarly, the court does not have jurisdiction to adjudicate claims alleged in the March 27, 2018 Complaint, based on statutes and regulations governing DOE's Public Service Loan Forgiveness Program ("PSLF Program"), because they are not money-mandating. Gov't Mot. at 7–8 (citing 20 U.S.C. § 1087(e); 34 C.F.R. § 685.219(c)(1)).

In the alternative, the March 27, 2018 Complaint should be dismissed, pursuant to RCFC 12(b)(6), because it does not "validly plead[] a claim for violation of the statutes and regulations governing the PSLF [P]rogram," nor a claim for illegal-exaction. Gov't Mot. at 8–9. Under the PSLF Program, the Secretary of Education "shall cancel the balance of interest and principal due . . . and any eligible Federal Direct Loan not in default," if a borrower has "made 120 monthly payments" and "been employed in a public service job" when those 120 payments were made. *See* 20 U.S.C. § 1087e(m)(1); *see also* 34 C.F.R. § 685.219(c)(1). The March 27, 2018 Complaint does not allege that Plaintiff made 120 monthly payments while employed in a public service job. Gov't Mot. at 8. Nor did the March 27, 2018 Complaint plead a valid illegal-exaction claim, as it does not allege that "either DOE, or the collection agency, has *actually collected* any money from her." Gov't Mot. at 9 (italics in original).

### ii. Plaintiff's Response.

Plaintiff responds, that the claims alleged in the March 27, 2018 Complaint should not be construed to be a claim under the APA, the Fair Debt Collection Practice Act, nor the Public Service Loan Forgiveness Program. Pl. Resp. at 2 ("The complaint [does not allege a violation of] the Public Service Loan Forgiveness Program but against the Individual Driven Repayment Plan"); Pl. Resp. at 5 ("the APA does not matter if the case is against the United States."); Pl. Resp. at 6 ("The Plaintiff complaint cannot be construed with the Fair Debt Collection Practice Act or any other Act."). Instead, the March 27, 2018 Complaint "informs the court simply that somehow my [IDR Request] was missed and not processed. Pl. Resp. at 2; Pl. Resp. at 5 ("Plaintiff had to file a lawsuit in order to get the [DOE]'s attention.").

Plaintiff also responds that the "[March 27, 2018 C]omplaint . . . is not to be construed with anything" and that "Plaintiff is not in no way possible trying to exact or extort anything from the Gov[ernmen]t." Pl. Resp. at 3. In addition, "[t]his court has full authority and the power to entertain tort claims." Pl. Resp. at 5 (citing 42 U.S.C. § 1983 ("Every person who, under color of any [law] of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]")).

### iii. The Government's Reply.

The Government replies that only the United States District Courts have jurisdiction to adjudicate claims alleged, pursuant to 42 U.S.C. § 1983. Gov't Reply at 1 (citing 42 U.S.C. § 1343(a)(4) ("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.").

### iv. The Court's Resolution.

The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The United States Supreme Court has held that, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States[.]" *See United States v. Mitchell*, 463 U.S. 206, 216 (1983). A statute or regulation is money-mandating when it "can fairly be interpreted as mandating compensation by the Federal Government." *See United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (internal quotation marks and citation omitted). And, the money-mandating source of law must be distinct from the Tucker Act itself. *See id.* (The Tucker Act does not create "substantive rights; [it is a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law[.]") (internal quotation marks omitted).

In this case, the March 27, 2018 Complaint fails to allege a claim that Congress authorized the United States Court of Federal Claims to adjudicate, as it does not identify "an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages." *See Todd*, 386 F.3d at 1094. In fact, the March 27, 2018 Complaint does not identify any source of law as the basis for the allegations contained therein. Compl. 1–4. Indeed, Plaintiff's June 26, 2018 Response states, "for the record that this claim is not to be construed with any statute, regulation, or program." Pl. Resp. at 2; *see also* Pl. Resp. at 3 ("Plaintiff['s March 27, 2018 C]omplaint and stated allegation [are] not to be construed with anything."). Therefore, Plaintiff has not met the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction to adjudicate the claims alleged in the March 27, 2018 Complaint.

### IV. CONCLUSION.

For these reasons, the Government's June 19, 2018 Motion To Dismiss is granted, pursuant to RCFC 12(b)(1). The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

SUSAN G. BRADEN
Senior Judge